Good morning. My name is Jeremy Thompson. I am here on behalf of Stanley Lubkin along with Saha Najjar. Mr. Lubkin is serving an illegal sentence. At the time that he was sentenced, Mr. Lubkin had three prior convictions for South Carolina manufacturing methamphetamine. The district court found that those offenses qualified as predicate offenses under 18 U.S.C. Section 924E, the Armed Career Criminal Act, and found that because he had those three convictions that he was an armed career criminal. And so that raised his sentencing range from zero to 10 years in prison to 15 years to life in prison, and he was sentenced to 15 years. If he were not an armed career criminal, his maximum sentence would have been 10 years, which is what makes his sentence illegal because he is not an armed career criminal. Can I just ask you about the appeal waiver? Yes. I'm not sure we get to any of this. Yes. Do you, he signed an appeal waiver, correct? And you don't allege that the appeal waiver is like categorical. This is not a, the appeal waiver is invalid. The appeal waiver is valid. Okay. Why isn't this case just Taylor-Sanders? Because this case, because the court, the district court cannot impose an illegal sentence. But that's the exact argument the defendant made in Taylor-Sanders. And Taylor-Sanders, the, so let me just, it's like Taylor-Sanders, and I think the Seventh Circuit actually does a really good job of this in their opinion, that says that's an argument the district court made a legal error in imposing the sentence, not that the sentence is illegal. So let me, do you agree that a person who's covered by the ACCA can get a sentence of this length? Yes. So then the argument is the district court made a legal error in concluding he's covered by the ACCA. But that Taylor-Sanders and the Seventh Circuit case, that doesn't make it an illegal sentence. That means the district court allegedly made a legal error in imposing the sentence. But in Cornett, this court found that the appellate waiver did not apply. But that was, Cornett involved, it didn't apply because the statute that was used to make the enhancement was unconstitutional. It didn't go, it didn't go to the step you're making here, which seems to be any time there is a error in applying the Armed Career Criminal Act, that therefore it's illegal and the waiver doesn't cover it. I mean, is that your argument, that any time a district court makes an error in the application of that act, that a waiver would not cover it? When the error was clear at the time the decision was made. So that is the distinction between this case and Cornett and other cases. Cornett found that the sentence was retroactively unlawful, right? Cornett says the appellate waiver, he is not bound by the appellate waiver because Johnson and Welch made the residual clause unconstitutional, Johnson made it unconstitutional, and then Welch made that decision retroactive, which meant that at the time the sentence was imposed, it was retroactively unlawful. That's not normally how we think about law. We normally think that when the Supreme Court said it was unconstitutional, it was always unconstitutional. But putting that aside for the sake of argument, like, I just, I don't, it just, I mean, as a person who candidly was on the Taylor-Sanders panel, this strikes me as exactly the same argument as in Taylor-Sanders. Taylor-Sanders, like, my restitution award is illegal. And then you ask, why is your restitution award illegal? You're like, because the district court imposed restitution in an amount that you can't do and applied an incorrect legal analysis in determining how much the restitution is going to be, and you're like, none of that means it was an illegal sentence. And I just don't see how this is any different than that. But that's what happened in Broughton-Jones as well, is the argument there was that the district court did not have the authority to impose restitution. And in order to reach that conclusion, this court found that interpreting the restitution statute, that the conduct didn't tie to the victim that was alleged for the restitution. That's a legal analysis of the statute. Can I ask you a different, so, like, to sort of narrow the zone of disagreement, too. The claim here is not, I think, so one of the things, one of the things that we've said about appeal waivers and the scope of appeal waivers and when they apply and when they don't is just because you pleaded guilty doesn't mean that you've, like, so part of the idea is, like, by pleading guilty and signing an appeal waiver, you assume the risk of certain things happening, because otherwise the waiver is meaningless, like the Seventh Circuit said in Worthen, like, it can't be the waiver is valid if and only if your claim would fail on the merits, because then the waiver literally doesn't do any additional work. So the waiver has to do some amount of additional work. So you're assuming some risk of something happening. And one of the things we've said fairly, like, you don't, like, waive the risk that the district court might do something completely crazy and unexpected that you have no notice might happen. But then I run into the problem that the plea agreement here specifically contemplates that you might be sentenced under the ACCA, like, and so there's no argument that your client wasn't on notice that the district court might conclude he's subject to sentencing under the ACCA, because the indictment mentions the ACCA and the plea agreement mentions the  You agree with that, too? I agree. Yes. Yes. So why isn't this just within, like, so the argument in a nutshell is the district court screwed up in concluding that I was sentenced under the ACCA, even though I was on notice that I could be sentenced under the ACCA. Why isn't that within the heartland of the risk you assume when you not only plead guilty, but also execute an appeal waiver? Because you cannot waive the imposition of an illegal sentence. No, you can't waive. What I can't waive is I plead guilty to a statute that doesn't authorize restitution for anybody. And then the district court whacks me with an, and I can't waive the interest. I plead guilty to violating nine. I'm doing the dangerous thing you should never try to do. I plead guilty to a 41B1C, I think, that has a statutory maximum sentence of 20 years. And then the district court hits me with a sentence of 45 years, because I'm sorry, no one told me I might get a sentence of more than 20 years, except that your client was told he might get a sentence under the ACCA. But again, to look at Broughton Jones, in Broughton Jones, the defendant entered into a plea agreement stating, I'm going to pay restitution to this individual, right? The defendant conceded that they were going to pay restitution. So your argument seems to be that if a district court makes an error in the application of the ACCA, that that's, you know, no matter how clear it is that that's under consideration, that that error, that the results of that merits error on the application means that you're not bound by the plea agreement. That's your argument, right? So long, with the important caveat, that so long as the decision and the law in place at the time of the district court's decision was clear. So making a legal error, you know, takes someone out of an appellate waiver. I mean, why would, I mean, what's the, I mean, yeah, anyway. Well, guidelines calculate, so maybe what, like, what is the government getting then? And then I guess maybe the answer is errors in calculating the guidelines, procedural and reasonable. It's not like they'd be getting literally nothing. They'd still be getting those things, right? Right. Yes, yes. The government gets the benefit of everything else with regard to the plea, with regard to the appellate waiver. We cannot raise guidelines arguments. We cannot, now, Mr. Lupkin received 180 months, for example, right, in this case. But let's say the district court had imposed a sentence. What's the basis for saying, yeah, you, I mean, what if you make a error in guidelines calculations that is based on clear law at the time and you say, hey, you, you, you applied the guidelines wrong. It was clear at the time. Because the categories are different. One is an illegal sentence and the other is not. Was that, is that, is that critically relying on the fact that we live in a post-Booker world or would the answer be the same in a, like, in a world where the guidelines were mandatory, would there be any distinction at all? Well, this court, so this court addressed a post-Booker case, and it goes again to my point about Booker not being retroactive. And forgive me, I don't have the site offhand. I know it's cited in the, I know it's cited in Cornett. But this court found that because Booker was not retroactive, an appellate waiver, where the defendant argued that his sentence was illegal based on Booker, was not valid. Because his, because his plea agreement occurred before Booker was decided. And then... But why doesn't this, I don't understand why, the indicia that we look at to determine the validity of appeal waivers seem to be, to point in the direction of a valid appeal waiver. We look at the plea colloquy, and the plea colloquy was unexceptional. The district court explained what it was, explained the waiver. One of the things I always look at is whether the district court was very forthright in the plea colloquy about explaining the waiver. And it was, and in addition to the plea colloquy, not only the plea colloquy, but the agreement itself indicates the possibility of an ACCA enhancement. So you're on notice, not just once, but twice, both in the plea colloquy and also in the plea agreement itself, that there's going to be a possible ACCA enhancement. And the exceptions, ineffective assistance doesn't, isn't involved, prosecutorial misconduct isn't involved, and the future changes in the law, I'm not sure what they would be, because he pled to a 922G, and there certainly hasn't been any that I'm aware of any change in 922G, and I don't think that the ACCA has changed materially from the time that the two agreements we're talking about. So it seems to me that the change, if there was any change at all, and I can't see it, is very different from the kind of earth-shaking change that was involved when the residual clause was declared unconstitutional and that ruling was ruled retroactive. So any change here, and I have to look hard to find it, would be sort of a very minuscule variety, and so if the plea colloquy was okay and the plea agreement was okay in terms of notice, and you signed a plea agreement, and I don't know why you wouldn't be held to the appeal waiver. Your Honor, because I compare it this way. To take Judge Hyten's example of 841B1C, let's assume you had a plea agreement that said a defendant is agreeing to plead to a B1C offense, and the statutory range, the statutory sentencing range for this offense is zero to 40 years in prison, and it contains an appellate waiver. And the defendant gets 40 years in prison, all right, goes to sentencing, gets 40 years in prison. The defendant would not be prohibited from arguing on appeal to this court that that exceeded the statutory maximum sentence, because it's an illegal sentence. Even though he agreed that there's an appellate waiver, he agreed to waive his appellate rights, he cannot waive the right to appeal an illegal sentence. So I was, my law clerk, let's be honest, I didn't find it, because this Broughton Jones case is not cited in your brief, but I found it. That's not a case about an appeal waiver. That's a case about an informal agreement with the district judge at sentencing. There's no appeal waiver in that case. Is there not an appeal waiver? I don't think so. I thought there was an appeal waiver. I'm literally reading it on the bench, but I don't. I believe there is, because it's cited in both Cornett and Archie. No, this is a case, it's, one final point requires consideration. The argument in that case was that the defendant, like, acquiesced at sentencing to an, I could be wrong, because I'm, in fairness to me, I don't think this is cited in any of the briefs. In fairness to you, I'm literally reading this in real time right now. Yes. Your Honor, the first two, three head notes, head note three, defendant may waive her right to appeal if that waiver is known, is a result of knowing an intelligent decision to forego right to appeal. So it does, it does discuss an appellate waiver, Your Honor. Well, but it just says the appeal waiver is valid, but then I get to the part of the discussion that says this, as you correctly say, the statute does not authorize restitution for particular types of victims in particular types of situations. This is the very end of the opinion, at least I think. And when the court is saying it's dealing with the sort of waiver issue, the waiver issue I see being discussed is the government made an argument that at the sentencing hearing itself the defendant sort of acquiesced in this type of restitution. And the court said this sort of informal agreement does not authorize the district court to oppose an illegal restitution order to preclude us from reviewing it on appeal. So can I just ask you with your, a little bit of remainder? So we do have to write an opinion in this case. So like, if we're going to write an opinion ruling for you, we would say this case is different from Taylor Sanders because blank. The sentence was illegal at the time it was imposed. But again, I will assure you that having sat through the Taylor Sanders argument, the defendant in Taylor Sanders said the exact same thing. Well, your honor, but that is, that is the principle I can distill from this court's precedents regarding illegal sentences. Are you trying to push on us a notion of a categorically unwaivable right? To an illegal sentence, yes. You cannot, you cannot waive the right to an, to have an illegal sentence. You can waive all kinds of things. A plea bargain is itself a waiver of one's right to trial. Right. But your honor, and I see I'm out of time. If I may, if I may finish, this court has repeatedly said, you cannot waive the right to, you cannot, you can challenge on appeal despite an appellate waiver, an illegal sentence. I mean, so, um, we're going to get into the merits of everything right at the outset to decide whether something is an illegal sentence or, or not. Where does that leave the appeal waiver? It only applies in sentences where you are dealing with cases where the, uh, the sentence, the statutory maximum is altered or the statutory minimum is altered. There is, um, there's, it doesn't apply to guidelines issues. It only applies primarily to ACCA sentences and 924C offenses. This is the point. It's not whether it is altered. It's whether it's arguably altered, but I just, I'm not sure that there is such a thing as an unwaivable right, as long as the waiver is knowing involuntary. There is something that troubles me about this. And that is that you got a good deal out of the plea bargain. You got two nasty counts, um, dismissed and that's a good achievement. So you got your, you got the benefit of the bargain. When the government enters a plea bargain, it's bargaining for saving of time, um, saving of time on trial and saving of time on appeal. And when we have to litigate appeal waivers and, and, and look at the merits or peek at the merits and everything, we're depriving one side of the benefits of the bargain. You go, go off, you got these counts dismissed and the government, the government's attempt to save itself time and trial and, and argument on appeal. They don't have that anymore because here we are and the government and what the government sought to gain from the plea bargaining process has now been lost. Your Honor, again, I recognize I'm out of time. Uh, if I may continue to respond, um, the government knows as well as the defendant does that the defendant cannot waive the right to challenge an illegal sentence on appeal. So the government went into this with as open eyes as the defendant did. But this, that's not the phraseology that the plea, that the plea agreement uses. The plea agreement talks about changes and I'm not sure that either the ACCA or the 922G involves in either one of those statutes has involved, um, changes. The wording of the plea agreement does not talk about illegal sentences or right to challenge this illegal sentence or whatever. That's not one of the three exceptions. But a defendant does not have to reserve those rights to challenge this. He, the defendant cannot. Then what's the use of the text of the plea agreement? If, if they're all, there are all sorts of preserved rights that aren't, um, that aren't mentioned in the exception. To review the, the arguments the defendant could raise, but is agreeing to with, do not raise by signing the appellate waiver. That's what's limiting in the plea agreement. I just had one thing I need to, so, uh, you are right. There is an appeal waiver in that case. The court deals with whether it's covered by the appeal waiver. It's early in the opinion. So I'm basically trying to spare you the need to file a 28-J letter to tell me that the opinion actually does talk about an appeal waiver. So I was wrong. Thank you, Your Honor. Um, and I will, uh, if there are no further questions, I'll reserve the rebuttal. You've got some rebuttal time. I don't mean to cut you off if you hate anything. All right. Mr. Daniels, happy to hear from you, sir. May it please the court. Elliot Daniels for the United States. Uh, Your Honors, uh, the government shares the concern that appears the panel does as well, is that this appeal is entirely foreclosed by a valid and enforceable appeal waiver in which Mr. Lubkin's challenge that he's now bringing on appeal does not fall within any recognized exception, but even apart from that valid and enforceable appeal waiver, uh, Your Honor, there is a categorical match with the state method. Well, okay. So great. Um, I mean, this may not matter. I suspect it won't matter, but, um, why isn't your argument that it's a categorical match, not forfeited, forfeited, forfeited, forfeited, forfeited, because I'm looking at the, your sentencing memorandum, which seems to say the exact opposite of what your brief is arguing. Uh, Your Honor, um, I admit below reading the record, uh, even again, last night that there was, there were several points where the government was inartful, where we're unclear. This is not inartful. You admit the text does not match. And then you say, it doesn't matter because you sort of fall back on the, as a practical matter, they're not going to, but as a practical matter, they're not going to, is not the same thing as saying there's a categorical match. But we also wrote in the, in, in the record below that the state statute is a categorical match. That's at JA 157. I'm looking at JA 157. I have it right here. Right. JA 152 and 157. Unlike the federal definition, comma, South Carolina does not limit its terms to only optical isomers. The government recognizes that the text of the statute initially appears to be overbroad because it includes isomers that the federal definition does not, but that is the argument that you are now making right now, that it doesn't include isomers that the federal statute does not. Your Honor, we'd submit that a waiver is a much higher bar than the waiver. This is forfeiture. This is straight up forfeiture or it's what my friends at the Supreme Court of Virginia would call approbate and reprobate. You can't say one thing, have a court accept the argument that you make, and then make a diametrically opposed argument on appeal. Your Honor, frankly, the, the case law governing this, the categorical match, particularly as it applies. Yeah, it's confusing. It's hard, but nothing would have stopped you from arguing belts and suspenders in the alter. First, it's a categorical match. Second, in the alternative, even if it's not, we still win, but that is not what you argued below. The focus below was the reasonable probability step. We, we started. It's not just the focus. You gave away the first issue below. Well, Your Honor, I, I'd submit that under Olano, it has to be an intentional relinquishment. That's waiver, not forfeiture. And we submit that, Your Honor, what we did below was not that intentional forfeiture or waiver. No, I was with you right until the end. Olano says there is nothing intentional about forfeiture. That's what makes forfeiture different than waiver. Forfeiture is I didn't mean to do it, but yet I did. Sure. Your Honor. Are we drifting into the merits? We are, Judge. You're talking about categorical matches and I hear the word isomer. My alarm bells go off, but are we drifting into a discussion of the merits? We are, Judge. So why would we do that? I don't think we need to here. And I appreciate Judge Hyten's questions. And it's something that I considered reading the record as well.  I mean, Judge, Hyten's questions are very apt, aren't they? I mean, they kind of smack you going and coming. Something we discussed plenty in preparation. So it's, you know, it's, it's sort of embarrassing really. But, but your, your point is for the appeal waiver to mean anything, we can't drift into the merits. And if we start getting into isomers and categorical matches and all the rest, then that's not where you want to go for the reasons my colleague pointed out. Your Honor. I don't want to go there. Well, I don't think that the law permits Mr. Lupton to go there respectfully. There is a valid and enforceable appeal waiver. The Cornett exception does not apply here. And I'm happy to address. It seems to me the strongest argument is to say the appeal waiver here is valid. The indicia that we normally use to assess the validity of the appeal waiver is valid. That the plea colloquy was unexceptional. The plea colloquy gave notice of the ACC enhancement. Then there was a plea agreement in addition to the plea colloquy. The plea agreement gave notice of the ACC enhancement. The plea agreement was signed by the defendant here after proper notice. The three conditions aren't met. And 922G hasn't changed. And the ACCA hasn't changed in the kind of material way that we were talking about earlier where a residual clause was ruled unconstitutional. And let's call it a day. The appeal waiver is valid for those reasons. Isn't that a straightforward way to go at this? Yes, Your Honor. And we completely endorse and accept and agree with that analysis. Your Honor, and I'd also point out that the record's even stronger than we've let on in this hearing. It's not just the text of the plea agreement, but it's also the wooden filing at JA 28 and 29 where the parties signed and agreed that the decision as to whether he is an ACCA defendant is, quote, a question reserved for the court to decide at sentencing. Waiver, I mean, the whole genesis of the notion of waiver was that a waiver has to be knowing and voluntary. That's right. And if you go back to the term waiver, that it's knowing and voluntary, this waiver was knowing in multiple places. And this waiver was voluntary. Nobody forced him to sign the plea agreement. He signed it on his own accord, as far as he was counseled. So if the notion of waiver means anything, it would mean that a plea agreement and plea colloquy in which the person was put on notice is valid. We agree, Your Honor. And it's in the text of the plea agreement. It's in the wooden filing. It's in his own counsel's words. At the change of plea, his own counsel wrote, quote, we've explained to Mr. Lubkin that that's a sentencing issue, JA 34, as to whether he's an ACCA. The government summarized the potential penalties he had faced and said at JA 49, quote, if the court determines at sentencing that he is an ACCA, this was completely foreseeable. And just to walk through this, just again, in the way, like, so let's pause it. He's on notice. He could be sentenced under the ACCA. No, that's not an agreement that he's properly, right? That's not an agreement he's properly sentenced under the ACCA. His lawyer's going to argue he's not. And so if he wanted to preserve his ability to do the thing that you claim he can't do in your view, the options are don't sign an appeal waiver at all. Alternatively, try to get the government to agree to add a clause to the appeal waiver that says this doesn't cover an argument that I'm not covered by the ACCA. That's, those are the ways that he could have preserved his ability to do this in your view. He could, Judge. Okay. In the White case, which he cites, which is 987 F 3rd 340, one of the reasons this court allowed the appeal to go forward was because there was a special and modified appeal waiver included in the plea agreement that allowed him to challenge the matter. Sort of like the sentencing equivalent of a conditional guilty plea? Exactly. And that's not present here. One thing I wanted to ask you here, why would you put or why would you agree to this third condition? I don't think it has particular, I don't think it has relevance to this case, but I'm just thinking as a general matter, this third condition changes in the law that will affect the sentence down the road. That seems to me to be a mushy, vague kind of thing that just going to cause you all kinds of trouble. Is this a national standard? Is this appearing in plea agreements nationwide? Judge, I can't speak for the other 93 judicial decisions. Is this a standard for South Carolina? In South Carolina it is, Judge. Why in the heck are you doing something like that? You're just, you're just begging for trouble over litigation of what is a change? What constitutes a change? What, what constitutes an effect on a sentence? You know, I mean, what, what law are we talking about? Case law or statutory law? Why would you put in something like that? I don't, I, the, the other two things, prosecutorial misconduct and ineffective assistance of counsel. Okay, those seem to be cabined, but this seems to me to be begging for trouble. And I don't know why it keeps, as you say, it's going to be popping up in all these agreements. Don't you think, do you, do you see the problems? Sure, I do, Judge. But I think what it shows is the reasonableness that the government's entered into these appeal waivers. And we rec, we're, we're recognizing that particularly in the 2255 context, the law is evolving and it does change. And within the time period with which they may be able to file, there may be something that the court should consider. Your Honor, I don't even think Mr. Lubkin is submitting that it falls within any of, any of the exceptions for that matter, much less the third. But as for the policy behind it, Judge? I don't think it applies to this case, but I, but it, or it may actually, I mean, who knows? Three, five, 10 years, hence we may have an, an appeal based on the terms of this. As for the policy behind it, Judge, unfortunately, for this panel, you might want to, you might want to, you might want to relay your concern about this. I'm happy to. I'm happy to, Judge. It is something that's above my pay grade and I can't entirely enlighten the panel on the policy behind it, unfortunately. But I think that, Your Honor has also pointed out to Mr. Lubkin, the extraordinary package of benefits that he got in exchange for this appeal waiver. I don't want to overlook the guidelines that the government agreed to stipulate, stipulate away, which is more than 10 years on the advisory guidelines that the government has agreed to not pursue the attempted murder cross-reference when he discharged a firearm twice in the direction of the police. That lowered the bottom end of his guidelines from 360 down to 235, more than 10 years off the jump. In addition, we also agreed to not pursue a possession of a stolen firearm enhancement. That's another two levels. And this matters because against the baseline assumption that as high as this sentence is, once the ACCA is triggered, the maximum is way, way, way higher than he got. It was in the bottom end, 360 months. And with the guidelines stipulations away, the government agreed to enter in exchange for the appeal waiver. It dropped from 360 down to 235. So we started with 10 years off of the guidelines in exchange for this appeal waiver. But we also moved to dismiss in reliance on. And that's because the statutory maximum under the ACCA is life. It's life. Yes, Your Honor. And we also agreed to dismiss the 924C discharge count. What was the statutory maximum if he's not under the ACCA? If he's not under the ACCA, it was 10 at the time and it's 15 now. We agreed to dismiss the mandatory 10 consecutive 924C discharge. The sentence was 15? Yes, Your Honor. It was a 15-year sentence. And we agreed to dismiss the 15-year carjacking felony. But the benefits don't just flow for the government. There are five victims in this case. And we promised them finality when we entered this plea agreement. We negotiated with the federal public defenders. We went back to the victims and said, this is the deal that we intend to strike with the defendant. Do you support it? What statements would you like to make to the court? And we have told them that in exchange for the benefits we've given Mr. Lubkin, the case is over. There were two police officers who had bullets fired in their direction. There were three people who suffered a carjacking. They also would be losing the benefit of an appeal waiver and finality if the rule that Mr. Lubkin advances is the law. I'm concerned about the, that we are having, we haven't touched on it in oral argument, but the briefing on the categorical match with regard to the serious drug offense was extensive and getting into isomers and this and that. And I don't like the direction of it because it, if this is going to be the standard here on out, then we're going to have a fully briefed appeal, whether we get into it or not, that deprives one side of the benefit of the bargain. They've already lost the benefit of their bargain. The government has to a considerable extent because you, you, you, you bargained not to have to brief this doggone question of isomers and, and the rest. That was part of what you bargained for. And you've lost the benefit of that with this extensive briefing on that question. We have judge, but I do, I would submit respectfully that published authority on the waiver question would help avoid this problem in the future. And that's what we're asking the court to do. If we can get some clarity in a published opinion on this waiver question, it may prevent us from having to come up here. Waiver of the appeal? Yes, Your Honor. Some clarity that it is enforceable, that there's not. And a future person who signs an appeal waiver is not allowed to do this. Yes, judge. It would help all of us. I think it would save judicial economy for the defense bar for us and the panel alike to have that published authority. All right. Thank you. Seeing no further questions, we rest in our brief. Your Honors. Thank you very much. You have some, you have some rebuttal time, Mr.  Just briefly, Your Honors, I would note that there is unpublished authority that says that we can do exactly what we're asking to do. And that is cited in our brief, but specifically United States versus Barr, in particular, the decision. Isn't that kind of a problem? I mean, doesn't Barr say something that Cornett doesn't say? I, again, I disagree that it does. I think that Cornett, by having it be a retroactively unlawful error, that meant that it was unlawful at the time it was imposed. Well, it did just say it was unlawful. It says it was impossible to apply the ACCA because the whole basis if you did it, wasn't even possible. So it's not like you, yeah, it really fits in the residual or doesn't fit in the residual. It's impossible. That's vanished. It's gone. The category of people properly sentenced under the residual clause is zero. There is no human being who can properly be sentenced under residual clause. Correct. But that was true at the time. That's what, that's what it being retroactive means is that it, at the time that the defendant was, was, I mean, I get your argument, but you know, you're, you're equating impossible to do this with possible, but doing it wrong at the time and, and, you know, that that's what you want us to argue. And I appreciate your argument there. Well, yes. And, and, um, to judge Wilkinson's point, this is likely to come up again, right? The government is likely to continue to argue that defendants who have been sentenced to ACCA for methamphetamine offenses under South Carolina law are, um, So one of them just needs to not sign an appeal waiver or get a carve out that allows them to appeal. And then, and then because the plea agreement provides for changes in the time, if this court finds that the appeal waiver bars, this appeal, Mr. Lupkin can file a 2255 and argue that at that point in time that his ACCA. So that how you procedurally that just, this is literally just an informational question. So that's how you do that. Cause when judge Wilkinson was raising that point, it was like, but how do you do that? Your time for appeal is totally wrong. Um, because a, because by finding that ACCA does not extend to South Carolina methamphetamine offenses, this court would be issuing a, a decision that is retroactive on collateral review and Mr. Lupkin's. Well, I guess the point is then your appeal waiver just drops out. Does the plea agreement bar you from filing a 2255? It's an appeal. No, no. Actually, I don't know why the appeal waiver has anything to do with it. You can file a 2255 if you want to file a 2255, but I guess all I'm saying is let's say a hypothetical future panel of this court would hold that. I mean, there's a whole separate problem, which is that your time for filing a notice of appeal is like way, way, way in the rear view mirror at that point. For Mr. Lupkin. Yes, yes. A direct, a direct appeal, a new direct appeal. Right. That's what I'm saying. Yes, that is correct. He would have to proceed under 2255, which he could do irrespective of this appeal waiver because the appeal waiver doesn't cover it. Well, at least the, sorry, let me rephrase the clause we've been talking about this morning does not talk about 2255. Maybe there's another clause that covers that. That is generally yes, but, um, that is generally how it is argued by the government that the 2255 appellate waiver, uh, the appellate waiver applies to a collateral review 2255. And I don't want to obviously prejudge that question. Um, and so that is, that is perhaps if this court again concludes that Mr. Lupkin cannot proceed forward with this argument because he waived it in this appellate waiver, then he would then need a subsequent decision from this court. But at that point in time, if this court issues one, then he can file it. So now that we've surfaced and discussed and realized that Bratton Jones actually does talk about waivers, again, my bad, don't need to file a 20HA. Um, but we discussed that opinion in Taylor-Sanders and we say several things in Taylor-Sanders about that decision. We say we make narrow exceptions in the restitution context, immediate thought. This case is not in the restitution context. So Taylor-Sanders characterizes that as a case about the restitution context. And then Taylor-Sanders also, so anyway, like, so well, actually, how do I deal with the fact that Taylor-Sanders says that's a case about making exceptions in the restitution context? Well, because Taylor-Sanders is also in the restitution context. So you have a question about... That's an argument that maybe Taylor-Sanders is wrong. I don't know how that applies. Well, well, but if you're talking about how does the appellate waiver work with regard to restitution, right? And restitution orders, Taylor-Sanders and Bratton-Jones have a lot to say on that, but they don't have any, anything to say on ACCA sentences because neither one of them deals with an ACCA sentence. They don't deal with a case. And again, I find that I struggle to, I struggled, personally, I struggled to understand why if, if the sentencing range had been zero to 10 and the district judge had sentenced him to 15 years, why I could argue that that sentence is illegal despite the appellate waiver, but because it was through ACCA that he got to 15 years that I can't. Thank you, counsel. Thank you. We will adjourn court and come down and read counsel. This honorable court stands adjourned. Signee die. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, A. Marvin Quattlebaum Jr., Toby J. Heytens